MICHAEL R. McGOWAN v. MARILYN E. McGOWAN

COTTER, C. J., LOISELLE, BOGDANSKI, SPEZIALE and HEALEY, Js.

---

[9] This section was later transferred to 29 U.S.C. § 848 (a) (1) (B) and, in 1978, was substantially altered.

Argued November 15, 1979—decision released February 26, 1980

*Stuart M. Ketaineck,* with whom, on the brief, was *Alan E. Silver,* for the appellant (defendant).

*Robert K. Walsh,* for the appellee (plaintiff).

LOISELLE, J.   The defendant appeals from the modification of a judgment of dissolution awarding alimony and child support.   The judgment was rendered March 14, 1978.   The decree was modified June 13, 1978.

In the March judgment, the court dissolved the marriage and ordered the plaintiff to pay $30 per week support for each of three minor children and $20 per week alimony.   The court awarded the defendant the parties' jointly owned home in West Haven, subject to an equitable lien of $5000 in favor of the plaintiff to be paid by the defendant within five years.   The household furnishings and counsel fees of $250 were also awarded to the defendant.

The plaintiff's affidavit, filed in March, 1978, showed that he had $180.39 per week net income

and $188.84 weekly expenses. His total assets were valued at $11,963.71 and his total liabilities at $11,854.96.

At the time of the hearing on the subsequent motion for modification, the plaintiff's affidavit, filed in June, 1978, showed that his weekly net income had not changed but that his expenses had increased to $284.19 per week. These expenses included the $110 per week which he had been ordered to pay for alimony and child support. His total assets were valued at $100 and his total liabilities at $8652.70. The reduction in assets was largely the result of the court's order transferring his equity in the family home to his former wife. The court modified the support order to $20 per week for each of the three minor children and $10 per week alimony for the defendant wife.

An increase in the plaintiff's expenses due to child support and alimony payments would not ordinarily constitute a substantial change in circumstances worthy of a modification of the original decree, because the effect of these payments is contemplated when the decree is entered. *Sanchione* v. *Sanchione,* 173 Conn. 397, 407, 378 A.2d 522 (1977); *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976); see Clark, Domestic Relations § 14.9, p. 456; 2A Nelson, Divorce & Annulment (2d Ed.) § 17.07. In this case, however, it is apparent that the trial court did not give credence to the plaintiff's original financial affidavit or that the evidence indicated some other source of revenue, or both, because the plaintiff's affidavit standing alone could not have supported the original award, even if his expenses could be pared to the bare essentials of existence and his obligations on past debts eliminated.

In its finding on the motion for modification held in June, 1978, the court found that the plaintiff had made a support and alimony payment each week since the date of the judgment, but was unable to pay the full amount due every week. One third of the finding is concerned with the financial assistance given the plaintiff by his sister. The court found that the plaintiff received money from his sister to pay his bills including the alimony payments; that he owed his sister $1630 which she had loaned him to pay his bills; that he would have been unable to pay the mortgage during the year that he did not live in the family home without the assistance of his sister; that she continued to loan him money to pay his bills and alimony until six or seven weeks before the hearing on modification on June 13, 1978; that his sister told him that she could no longer loan him any money for bills and alimony; and that he no longer had his sister as a source to draw upon because she had no more money to give him.

The court found that there was "no way" the plaintiff could make payments of alimony and child support of $110 per week. This finding is more in the nature of a conclusion and will be considered as such. The ultimate conclusion of the court was that there had been a substantial change for the worse in the plaintiff's financial condition and that these changes supported a modification.

" 'Inability to pay' does not automatically entitle a party to a decrease of an alimony order. It must be excusable and not brought about by the defendant's own fault." *Sanchione* v. *Sanchione,* supra, 407. It is evident from the affidavits and the finding that from the date of the decree the plaintiff would

have had difficulty meeting his alimony and support payments. His sister had been the source of the additional sums to supplement his income, and he had come to rely on her financial assistance both before and after the dissolution. When his sister's help was no longer available, it became clear that he could not make the payments ordered.

The court was not in error in concluding that the inability of the plaintiff's sister to help him, which inability arose subsequent to the judgment, constituted a change in circumstances which was substantial. Both before and after the dissolution, the plaintiff's financial condition was critical. The loss of supplemental financial assistance in such a situation can be found to be a substantial change. The award was within the power of the court to modify as authorized by General Statutes § 46-54, now § 46b-86.

The plaintiff's motion for modification was filed less than three months after the dissolution. This raises the issue of whether the motion was an improper substitute for an appeal or an attempt to "judge shop." The court's finding indicates that in this instance, however, the plaintiff's loss of his sister's financial support after the dissolution decree constituted a critical change in the plaintiff's financial condition. This justified the motion as made.

There is no error.

In this opinion BOGDANSKI and HEALEY, Js., concurred.

COTTER, C. J. (dissenting). The propriety of the order of modification should be decisive of the merits in this appeal. It is well-established and

has been recently reiterated by this court that "[a] modification of an order for the payment of alimony or support is permitted only where there has been a showing that there has been a substantial change in the circumstances of either party and that these changed circumstances requiring modification were not contemplated by the parties at the time of the entry of the original decree and have arisen subsequent to the entry of that decree." *Friedly* v. *Friedly,* 174 Conn. 279, 280, 386 A.2d 236; General Statutes § 46b-86; see also *Fricke* v. *Fricke,* 174 Conn. 602, 392 A.2d 473; *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172; *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202; 2A Nelson, Divorce & Annulment (2d Ed.) § 17.07. Since the plaintiff cannot be deemed to have made the requisite showings under the tests just noted, and consequently the support order should not have been modified, I must dissent.

SPEZIALE, J. (dissenting). Regrettably, the majority has put its imprimatur on judge-shopping. Also, in finding a substantial change in circumstances on the facts of this case, the majority has opened the floodgates to frivolous motions for modification.

When the marriage of the plaintiff, Michael McGowan, and the defendant, Marilyn McGowan, was dissolved on March 14, 1978, the trial court (*Hon. James P. Doherty,* state referee) ordered, inter alia, the plaintiff to pay to the defendant toward the support of the children $30 per week for each of three minor children and $20 per week as alimony. No appeal was taken from this order. A *mere* two months and ten days later, however, on May 24, 1978, the plaintiff filed a motion for modification of alimony stating that "due to the increase

in the cost of living and other causes, he is not able to pay the alimony and support [originally] awarded by the Court [*Doherty,* state referee] . . . ." On June 13, 1978, this motion was granted by the court (*Phillips, J.*) and the support payments were reduced to $20 per week for each of three children and the alimony award was lowered to $10 per week. When an arrearage of $517 was paid, the alimony was to increase to $20 per week.

In its finding on the motion for modification the court (*Phillips, J.*) found that the plaintiff's weekly expenses in March of 1978, were $188.84; and as of June of 1978 his expenses had increased by approximately $100, which increase included alimony and support payments totaling $110. Thus, absent the support and alimony payments, the plaintiff's weekly expenses *decreased* by $10 between March and June. On March 7, 1978, the date of the final hearing for the dissolution, the plaintiff had liabilities totaling $11,854; but on June 13, 1978, the plaintiff's liabilities had *decreased* to approximately $8652. In addition to the support and alimony payments, the only other indication in the finding that the plaintiff's financial condition had worsened was the finding that the plaintiff no longer had his sister as a source of loans since she had no more money to give him. The plaintiff was found to have owed his sister $1630.

The majority states that it is "apparent that the trial court did not give credence to the plaintiff's original financial affidavit or that the evidence indicated some other source of revenue, or both, because the plaintiff's affidavit standing alone could not have supported the original award." The majority is obviously concerned with the inability of the plain-

tiff to make ends meet, and is therefore seeking to treat this case as an appeal of the original order. The plaintiff does have a duty to support his three minor children born between 1964 and 1968. It appears that even the original award would not provide sufficient funds to enable them to have a style of life equal to that they enjoyed prior to the divorce. The limited funds involved evidently supported a family of five when they lived together; however, if two separate residences are to be maintained, it is obvious that all will have to struggle to provide the necessities. Realistically speaking, it may be that both the plaintiff and the defendant will have to seek other sources of revenue, perhaps through part-time employment.

Despite the majority's attempts to reach the issue of whether the affidavit alone could have supported the original award, that issue is not before us. The plaintiff, who was represented by counsel during the dissolution action, chose not to appeal the support and alimony order. Further, what may be "apparent" to the majority, I feel is speculative and irrelevant insofar as this appeal is concerned. Our inquiry must be limited to the facts contained in the record before us.

The conclusions of the court in ordering modification of the original support and alimony order are tested by the finding. A conclusion must stand unless the facts found are legally or logically inconsistent with it. *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92 (1972). As indicated, both the weekly expenses and the liabilities of the plaintiff had actually decreased since the original order. The question, then, is whether the termination of loans

by the plaintiff's sister or the increase in weekly expenses which is exclusively attributable to the support and alimony payments constitutes a substantial change in circumstances as required by § 46-54 of the General Statutes (now § 46b-86) to warrant modification of the support and alimony award. We have emphasized repeatedly that "[f]or purposes of a new hearing on alimony modification . . . modification is not warranted unless there has been a substantial change in the circumstances of either party, occurring subsequent to the entry of the original decree, *and not contemplated by the parties at that time. Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172." (Emphasis added.) *Sanchione* v. *Sanchione,* 173 Conn. 397, 407, 378 A.2d 522 (1977). The majority acknowledges, as it must, that an increase in the plaintiff's expenses due to child support and alimony payments is not a basis for modification of the original decree because the effect of these payments is contemplated when the decree is entered. Likewise, for this very same reason, the loans in the instant case do not provide a basis for modification. An examination of the record before us reveals that according to the financial affidavit in March of 1978, the plaintiff owed Katherine McGowan $1400. His affidavit filed in June shows a debt to Katherine McGowan of $1430. According to the finding the defendant owed his sister $1630. If one is to accept the premise of the majority that the cessation of the loans by Katherine McGowan was not contemplated by the parties at the time of the original decree, then one must accept the converse—that the parties contemplated that the extensions of credit would continue indefinitely. Such an illogical assumption, however, cannot be attributed to the parties.

There was no change in circumstances since the original orders for support and alimony were entered that was not within the contemplation of the parties at that time. For the majority to find a *substantial* change in circumstances on the facts of this case is to open the floodgates and give the greatest encouragement both to frivolous motions for modification and to judge-shopping. I am compelled to dissent from the opinion of my colleagues and conclude that the motion for modification should not have been granted by the trial court.